OPINION
{¶ 1} Defendant-appellant, Deanna Robinson, appeals from her conviction in the Fayette County Court of Common Pleas for one count of felonious assault with a specification that she discharged a firearm from a motor vehicle. For the reasons outlined below, we affirm the conviction.
 {¶ 2} In the early morning hours of October 3, 2003, appellant and three other women were in a vehicle in pursuit of another vehicle through the streets of Washington Court House, Ohio. Appellant was a backseat passenger in a vehicle driven by Melissa Myers. Also in that vehicle were Hillary Dillon and Charlotte Tressler. In an attempt to confront the father of Dillon's son, Phillip Davis, Myers, Dillon, Tressler and appellant began to follow Davis' vehicle. The vehicle they were chasing was actually being driven by Davis' aunt, Chatney White, and contained two passengers, Davis' mother, Talissa Davis, and White's five-month-old daughter.
 {¶ 3} After approximately eight blocks, both cars pulled over and the occupants began to exit their vehicles. At this point, appellant obtained a gun from Myers and shot at White's vehicle two times. The occupants then got back into their vehicles and left the scene. White immediately drove her vehicle to the Fayette County Sheriff's Department and reported the incident. A report of gun shots had already been received and officers were dispatched to investigate. White and Talissa Davis gave their statements to officers and returned to their vehicle. Upon returning to her vehicle, White noticed that her windshield was cracked. White went back in and reported the crack to officers. Officers then discovered a bullet hole in the car's driver's side taillight and a path through the trunk and back seat of the vehicle where the bullet had traveled before hitting the dashboard and windshield. Mapping the path of the bullet, officers determined that the bullet traveled at a relatively level path through the vehicle, traveling at a slightly left to right angle. No bullet was recovered from the vehicle.
 {¶ 4} Based on the statements provided by White and Talissa Davis, officers located Myers' vehicle and seized it pending execution of a search warrant. Later investigation of the vehicle yielded a .38 caliber revolver, found in the trunk still loaded, cocked, and wrapped inside a t-shirt. Forensic swabs of the front, driver's side window of Myers' vehicle also identified traces of lead, often associated with gun residue, on the top outside edge. A spent bullet recovered from the scene could not be conclusively linked to the revolver recovered from Myers' vehicle.
 {¶ 5} Officers also obtained statements from appellant, Dillon, Myers and Tressler. Dillon's statement identified appellant as the shooter. Upon interviewing appellant, she admitted that she had fired the gun. However, appellant claimed that she had fired the gun only once into the air, and denied attempting to injure anyone.
 {¶ 6} Both Myers and appellant were indicted for their involvement in the shooting. Appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), with a firearm specification under R.C. 2941.146, a felony of the second degree.[1] The case proceeded to a jury trial on October 19, 2005. At trial, the state presented the testimony of Dillon, White, Tressler, and the investigating officers, establishing the facts as described above.
 {¶ 7} The case was submitted to the jury and they began deliberating that same evening. Sometime shortly after 7:00 p.m., the bailiff asked the jury if they wished to continue deliberations or retire for the evening and return the following day. At approximately the same time, a juror began experiencing pain which he associated with past experiences of passing a kidney stone. The court allowed the jurors to take an approximately 15-minute break from deliberations to allow the juror member to lie down on a bench in the hallway. The juror then said that he felt better and returned to deliberations. The jury resumed deliberations and returned with a verdict approximately 15 minutes later. The jury found appellant guilty of both felonious assault and the firearm specification. On November 2, 2005, the court sentenced appellant to five years imprisonment for the offense of felonious assault, with a mandatory consecutive term of five years imprisonment on the firearm specification, for an aggregate prison term of ten years. Appellant then filed this timely appeal, raising three assignments of error for our review.
 {¶ 8} Assignment of Error No. 1
 {¶ 9} "APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND IS THEREFORE CONTRARY TO LAW."
 {¶ 10} Appellant contends that the state failed to present any evidence to demonstrate that she knowingly attempted to cause harm and that her conviction is not supported by legally sufficient evidence. We disagree.
 {¶ 11} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Lucas, Tuscarawas App. No 2005AP090063,2006-Ohio-1675, ¶ 8, citing State v. Jenks (1991 ), 61 Ohio St.3d 259. "[Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899.
 {¶ 12} The essential elements of the offense of felonious assault are defined by R.C. 2903.11, which provides, in relevant part:
 {¶ 13} "(A) No person shall knowingly * * * (2) cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 14} "Attempt" is defined by R.C. 2923.02(A), which provides:
 {¶ 15} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of the offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 16} "Knowingly" is defined by R.C. 2901.22(B), which provides:
 {¶ 17} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 18} We have previously recognized that "the mental state of 'knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of'purposely.'" State v.Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 22. Absent a defendant's admission regarding his knowledge or intent, "whether a person acts knowingly can only be determined * * * from all the surrounding facts and circumstances, including the doing of the act itself." Id., citing State v. Huff (2001), 145 Ohio App.3d 555, 563. We also noted that "if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." Id., citing State v. Dixon, Cuyahoga App. No. 82951,2004-Ohio-2406.
 {¶ 19} Appellant contends that the state failed to produce any evidence demonstrating that appellant knowingly attempted to cause harm to White. Appellant argues she was unaware of the identity of the occupants of the vehicle. She further argues that she admitted only to firing the gun once, into the air, and was unaware that the firearm had discharged a second time. She therefore contends that there is a lack of evidence to demonstrate that she knowingly engaged in conduct with the intent to cause harm to White.
 {¶ 20} However, as described above, the state need not demonstrate that appellant specifically intended to cause harm to White. The state need only establish that appellant knowingly engaged in conduct which, if successful, would result in physical harm to someone. The evidence produced at trial established that appellant asked Myers for the gun when the occupied car they were pursuing through the streets of Washington Court House finally pulled over. The testimony of Dillon, White, and Talissa Davis established that appellant then fired the gun two times. The testimony of Washington Court House police officers established that a bullet entered the taillight of White's vehicle and carved a path which narrowly missed the three occupants. This evidence, if believed by the jury, was sufficient to demonstrate that appellant knowingly engaged in conduct (i.e., twice firing the gun at White's vehicle) which, if successful, would have resulted in physical harm to someone in White's vehicle. Appellant's argument regarding her admission that she fired the gun only one time, into the air, and that she was unaware of whether the gun may have fired a second time, amounts to an issue of evidentiary weight and credibility. Determinations with regard to the weight and credibility of evidence are left to the jury and an evaluation of such evidence is not appropriate in a review of the legal sufficiency of the evidence.
 {¶ 21} Finally, the state need not establish that appellant knew that it was White in the vehicle to establish that she knowingly attempted to cause her physical harm. Appellant's argument that she was unaware of the identity of the occupants of the car she shot at is irrelevant to a determination of whether she acted knowingly in attempting to cause those occupants harm. We find that there was sufficient evidence to support appellant's conviction for felonious assault. Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE ELEMENTS OF NEGLIGENT ASSAULT, A LESSER INCLUDED OFFENSE OF FELONIOUS ASSAULT."
 {¶ 24} Appellant argues that the trial court erred in failing to instruct the jury that it may consider the offense of negligent assault as a lesser included offense of felonious assault. Appellant contends that the evidence failed to support a conviction on felonious assault but could reasonably have supported a conviction for negligent assault.
 {¶ 25} Appellant correctly acknowledges that due to the failure of trial counsel to request an instruction on negligent assault as a lesser included offense of felonious assault in the trial court, we may review this assignment for plain error only. Haney, 2006-Ohio-3899 at ¶ 50. Plain error does not exist unless, but for some error committed by the trial court, the outcome of the trial would have been different. Id. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id., quoting State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 26} In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court established a three part test to determine whether an offense is a lesser included offense of another offense.
 {¶ 27} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Id.
 {¶ 28} Further, even where an offense may be found to be a lesser included offense of another, a jury instruction on that lesser included offense is not required unless "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Johnson,112 Ohio St.3d 210, 2006-Ohio-6404.
 {¶ 29} The offense of negligent assault is defined by R.C. 2903.14, which provides, in relevant part:
 {¶ 30} "(A) No person shall negligently, by means of a deadly weapon or ordnance as defined in R.C. 2923.11 of the Revised Code, cause physical harm to another or another's unborn."
 {¶ 31} Under facts similar to those presented in this case, the Fifth District Court of Appeals determined that negligent assault was not a lesser included offense of felonious assault. State v. Diles, Jr., Morrow App. No 03 CA 0011, 2004-Ohio-6368. In that case, appellant Diles was being pursued in his vehicle by a Morrow County Sheriff's Deputy when he deliberately turned his vehicle into the deputy's cruiser, attempting to push the deputy off the road. Id. at ¶ 4-5. The deputy was not injured in the incident, but Diles was convicted of felonious assault for knowingly attempting to cause physical harm by means of a dangerous ordnance. At trial, Diles requested an instruction on negligent assault as a lesser included offense, which the court denied. On appeal, the court found that the trial court properly rejected the instruction. Id. at ¶ 21. The court noted that a conviction for the offense of negligent assault requires a finding that actual physical harm was caused, while a conviction for felonious assault requires only that a defendant knowingly attempted to cause physical harm. Id. Because the appellant's act in knowingly attempting to cause physical harm could be committed without committing the lesser offense of negligently causing physical harm, negligent assault was not a lesser included offense in that case. Id.[2]
 {¶ 32} Similarly, we find no error, much less plain error, in the trial court's failure to instruct the jury with regard to the offense of negligent assault in this case. No evidence was presented at appellant's trial asserting that any actual harm was caused when appellant fired the gun at White's vehicle. As negligent assault necessarily requires a finding that physical harm was caused, such a conviction could not stand under the facts as of this case. Further, while appellant argues that the evidence could only support a finding that she acted negligently in firing the gun, we have, as discussed above, determined that the evidence was more than sufficient to support a finding that she acted knowingly. Accordingly, appellant's second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE JURY'S DELIBERATIONS WERE UNDULY INFLUENCED BY THE MEDICAL CONDITION OF ONE MEMBER, AND THE DEFENDANT WAS DENIED A FAIR TRIAL AS A RESULT."
 {¶ 35} In her final assignment of error, appellant contends that the jury verdict was compromised by the events which occurred during deliberations. Appellant argues that the deliberations may have been tainted by the bailiff's questions and a desire to accommodate the juror's medical condition.
 {¶ 36} R.C. 2945.33 governs the keeping and conduct of a jury after a cause is submitted to them. That section provides, in relevant part, the following:
 {¶ 37} "When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. Upon the trial of any prosecution for misdemeanor, the court may permit the jury to separate during their deliberation, or upon adjournment of the court overnight."
 {¶ 38} Ohio courts have recognized that communications with a juror about a matter under deliberation is presumptively prejudicial. SeeState v. Czajka (1995), 101 Ohio App.3d 564 (finding state overcame presumption of prejudice regarding bailiff's communications to jury on purely procedural matters). However, it has also been held that this presumption is not conclusive and actual prejudice must be shown.State v. Johnson, Cuyahoga App. No. 80857, 2003-Ohio-1826 (rejecting claim of prejudicial "contact" where jurors merely observed co-defendant in parking lot).
 {¶ 39} Initially we note that no record was made at the time of the decision to allow the ill juror to lie down. At the request of appellant, the court made a record of the incident following the reading of the jury's verdict. The court noted that the bailiff had previously asked the jurors if they intended on staying to reach a verdict or if they planned on retiring for the evening and returning the following day. The bailiff related to the court that he had detected some disagreement among the jury members with regard to their reaching a verdict at that time. At approximately the same time, the court noted, one jury member began experiencing pain due to the passing of a kidney stone. Shortly thereafter, the court instructed the bailiff to allow the jury a 15-minute break to permit the juror to lie down. The ill juror returned to continue deliberations and approximately 15 minutes later, the jury announced that it had reached a verdict. Both appellant and the state agreed with these facts as the court recited them for the record. Appellant's trial counsel did not object to the court's manner of handling the issue.
 {¶ 40} Appellant cites to cases such as State v. Lane (1988),48 Ohio App.3d 172 and State v. Adams (1943), 141 Ohio St. 423, for the proposition that the bailiff engaged in improper communications with the juror which are presumptively prejudicial. However, both Lane andAdams involved circumstances in which the bailiff made blatantly improper remarks to jurors regarding the necessity of their reaching a verdict. Further, in both cases, the jurors later testified that such communications prejudicially affected their verdict. We are faced with no such circumstances in this case.
 {¶ 41} The bailiff's question to jurors in this case, regarding whether they intended to continue to deliberate or retire for the evening, was merely procedural and did not involve substantive issues of the case or in any way relate to appellant's guilt or innocence. There is nothing to suggest that the bailiff made any improper statements to any member of the jury. In the absence of any evidence indicating impermissible, substantive communication between the bailiff and the jury, we decline to find misconduct or presume prejudice warranting a new trial.
 {¶ 42} Further, appellant has failed to establish that either the bailiff's question or the juror's medical condition in any way affected the jury's ultimate verdict. Appellant refers to the bailiff's report that the jury had previously appeared to be in disagreement over the verdict and yet returned with a verdict within 15 minutes of the ill juror's return. However, this fact, without more, is insufficient to require an inference that the jury's verdict was somehow tainted by the juror's illness. Appellant makes only speculative claims that the jury "may have" cut their deliberations short in order to convenience the juror and "may have" exercised an impermissible rush to judgment. Such speculation is insufficient for any showing of prejudice requiring a new trial.
 {¶ 43} We note however, that while we decline to find prejudice, the procedure followed by the trial court in this case does, in fact, violate the bounds of the statute cited by appellant. The trial court permitted the bailiff to act as a liaison for communications with the jury regarding whether they intended to continue deliberating or retire for the evening. The bailiff then relayed information that the jury appeared to be in disagreement over the verdict. Any procedure which permits communications with the jury off the record and outside the presence of counsel invites the opportunity for question and is to be avoided. The better practice in this case would have been to bring the jury into the courtroom and place the entire decision to allow the ill juror time to rest on the record, as would be the procedure with any other jury question. However, because we find that appellant did not object to the court's handling of the incident and has wholly failed to establish any prejudice resulting from such communications, we find the error harmless.
 {¶ 44} Finally, appellant references Crim.R. 24(F) for the proposition that, after a jury retires to deliberate, alternates may not replace regular jurors. However, that is clearly not the situation reflected by the facts of this case. The ill juror said that he felt better and then returned and finished deliberations. No alternate was required and this rule is therefore inapplicable.
 {¶ 45} Accordingly, appellant's third assignment of error is overruled.
 {¶ 46} Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] Myers was indicted on complicity to felonious assault, also with a weapons specification. The trials were held separately.
[2] The Diles case is distinguished from those cases in which actual harm was caused; under which circumstances negligent assault may be a lesser included offense of felonious assault. In such cases, the only difference between the offenses is the mens rea of knowingly versus purposefully. See State v. Egolf, Lake App. No. 2000-L-113, 2003-Ohio-601.