[Cite as *State v. Hilton*, 2015-Ohio-5198.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO/CITY OF HAMILTON,  :

     Plaintiff-Appellee,  :

                                    :

     - vs -

                                      :

RICHARD HILTON,  :

     Defendant-Appellant.  :

CASE NO.  CA2015-03-064

O P I N I O N
12/14/2015


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 15CRB00320


Neal D. Schuett, Hamilton City Prosecutor, 345 High Street, 2nd Floor, Hamilton Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant


**M. POWELL, J.**

{¶ 1}  Defendant-appellant, Richard Hilton, appeals his conviction in the Hamilton Municipal Court for domestic violence.

{¶ 2}  Appellant was charged in January 2015 with one count of domestic violence. The state alleged that on December 27, 2014, appellant grabbed his former wife, Shannon Hilton, by the face and pressed his thumbs in her eyes, causing her physical harm.  A bench

trial held in February 2015 revealed the following facts.

{¶ 3} The parties were divorced in 2013 but continued to spend time together thereafter. They have three children. On December 27, 2014, the parties and two of their daughters spent the day shopping before going out to dinner. During the drive back to appellant's house, appellant and Shannon began to argue about their relationship and the fact Shannon did not want to stay with appellant for the night. Upon arriving at his house, appellant parked the car near a barn away from the house. The group exited the vehicle and the children went inside the house. Appellant and Shannon continued to argue outside. By then, it was past 11:00 p.m., there was no light on the barn, and it was dark as appellant lives out in the country.

{¶ 4} Shannon testified she was yelling during the argument because she was getting angry. Appellant asked her to stop screaming, told her to calm down, and then put an open hand over her mouth. Shannon testified that appellant tightly squeezed her cheeks for a few seconds, applying pressure. Upset, Shannon took a step back and told appellant, "get your hand off of me," while using profanities. Appellant responded by grabbing the top of Shannon's face. Subsequently, with his hands on both sides of Shannon's face and his thumbs on her eyelids, appellant applied pressure with his thumbs for a few seconds, which caused immediate pain in Shannon's left eye. Shocked, Shannon told appellant, "I can't believe you just stuck your thumb in my eye," and tried to leave. Appellant denied poking her in the eye but apologized if he had. Appellant then pulled Shannon backwards, stating "you don't have to leave, I'm just trying to talk to you." Shannon reiterated her decision to leave.

{¶ 5} Shortly after, appellant's father, accompanied by one of the parties' daughters, came outside and asked if everything was okay. According to both parties, appellant replied, "yes, everything is okay." Appellant testified that Shannon also "said at that time that everything is okay." Appellant subsequently apologized and Shannon left.

{¶ 6}   The next evening, the police were contacted; a police officer met with Shannon and took pictures of her injuries.  The photographs, which were admitted into evidence at trial, showed red marks on both of her cheeks and a scratch down by her neck.  The photographs also showed that the outer white part of her left eye was red.  Shannon testified her injuries were from appellant's "hands crushing my face."  Shannon testified appellant was angry during the incident and that he was speaking louder than normal.  Shannon also testified that while it was dark, she "could clearly see" appellant and "see in his eyes" when "he was in my face and grabbed me[.]"

{¶ 7}   Appellant admitted he wanted to spend additional time with Shannon that night and that she did not, but denied he was angry about her refusal.  Rather, appellant testified he was angry at the fact Shannon was yelling and screaming at him, but denied his voice was louder than normal.  Appellant testified he did not remember putting his hand over Shannon's mouth.  With regard to putting his thumbs on her eyelids, appellant testified he was trying to put his hands on her face to calm her down as he had done multiple times during their marriage.  However, because it was "total darkness" and "pitch black," he could not see his hands or her face and did not know where his hands landed.  Appellant testified he did not mean to hurt Shannon.  When he saw her the following morning, appellant observed redness in Shannon's eye.  Only then did he believe he might have actually poked her in the eye.

{¶ 8}   Both parties testified that during their marriage, it was common for appellant to hold Shannon's face with his hands as a sign of affection or to calm her down.  However, on those prior occasions, appellant had never put his thumbs on her eyelids and Shannon had never sustained an injury.  Shannon testified that appellant put his hands on her head during the incident out of anger, and not out of affection.  Both parties testified that following the incident, they continued to spend time together as a family.

{¶ 9} On February 20, 2015, at the close of the bench trial, the trial court found appellant guilty of domestic violence. The trial court specifically stated it found Shannon "to be testifying truthfully and honestly. Did not believe she was lying in any way." The trial court further stated it did not find appellant's testimony to be credible, including his assertion it was so dark outside that he could not see his hands, and that it did not believe his testimony as much as it believed Shannon's testimony.

{¶ 10} Appellant appeals, raising the following two assignments of error:

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. HILTON OF DOMESTIC VIOLENCE.

{¶ 13} Assignment of Error No. 2:

{¶ 14} MR. HILTON'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Appellant argues his domestic violence conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove he knowingly caused Shannon's injuries. Appellant asserts that Shannon's injuries were clearly accidental because (1) he could not see his hands or Shannon's face as it was "total darkness," (2) he was calm, was not acting aggressively or angrily, and in fact was trying to be the peacemaker, (3) he was surprised he had poked Shannon in the eye, (4) Shannon told his father everything was okay, and (5) Shannon waited 23 hours to report the incident.

{¶ 16} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17.

{¶ 17} In determining whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *Id.* at ¶ 18. In conducting its review, an appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 18} In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Cooper* at ¶ 7. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 10.

{¶ 19} Appellant was convicted of domestic violence, in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 20} Absent a defendant's admission regarding his knowledge, whether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself. *State v. Robinson*, 12th Dist. Fayette No. CA2005-11-

029, 2007-Ohio-354, ¶ 18.  "[I]f a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." *Id.*

{¶ 21} After a careful review of the record, we find that the trial court did not lose its way in convicting appellant of domestic violence.  Given Shannon's testimony that appellant engaged in a physical confrontation when he placed an open hand over her mouth and tightly squeezed her cheeks for a few seconds, and then put his thumbs on her eyelids and applied pressure for a few seconds, which immediately caused pain in her left eye; the fact appellant was angry during the argument; and Shannon's testimony that she could see appellant's face during the physical confrontation, we find that the trial court could reasonably conclude that appellant knowingly caused physical harm to Shannon.  *See Youngstown v. Dixon*, 7th Dist. Mahoning No. 07 MA 105, 2009-Ohio-1013.  The fact that appellant was surprised he had poked Shannon in the eye or that Shannon waited 23 hours to report the incident does not render the poking in the eye an accident or one that was done unknowingly under R.C. 2901.22(B).  *See State v. Clark*, 8th Dist. Cuyahoga No. 83318, 2004-Ohio-2162.

{¶ 22} We decline to overturn the verdict because the trial court did not believe appellant's testimony.  It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.  *See State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207.  Further, "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39.  Here, the trial court specifically stated it did not find appellant's testimony to be credible.  By contrast, the trial court found Shannon "to be testifying truthfully and honestly." As the trier of fact in this case, the trial court was in the best position to judge the credibility of

the parties and the weight to be given the evidence. *Dixon* at ¶ 30.

**{¶ 23}** We therefore find that appellant's domestic violence conviction is not against the manifest weight of the evidence. As a result, we also necessarily find that appellant's conviction is supported by sufficient evidence. *Church*, 2012-Ohio-3877 at ¶ 10.

**{¶ 24}** Appellant's first and second assignments of error are accordingly overruled.

**{¶ 25}** Judgment affirmed.

PIPER, P.J., and HENDRICKSON, JJ., concur.