[Cite as *State v. Brummett*, 2024-Ohio-2211.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-10-085 |
| | : | O P I N I O N |
| - vs - | | 6/10/2024 |
| | : | |
| GILBERT LEE BRUMMETT II, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR40123


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

James F. Maus, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Gilbert Lee Brummett II, appeals from his conviction in the Warren County Court of Common Pleas after the trial court found him guilty following a bench trial of one count of second-degree felony felonious assault with attached three-year and five-year firearm specifications. For the reasons outlined below, we affirm.

{¶ 2}   On February 6, 2023, the Warren County Grand Jury returned an indictment charging Brummett with one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony pursuant to R.C. 2903.11(D)(1)(a).  The charge included both three-year and five-year firearm specifications in accordance with R.C. 2941.145(A) and 2941.146(A), respectively.[1]  The indictment followed an incident that took place one month earlier on January 6, 2023.

{¶ 3}   During this incident, it was alleged Brummett had stalked and waited several hours for the victim, Jason Roberts, to get off work at the Frisch's restaurant located near the King's Island amusement park in Mason, Warren County, Ohio.[2]  Thereafter, upon Roberts leaving work to go home for the evening, it was alleged that Brummett, driving a black minivan, followed closely behind Roberts' vehicle while both he and Roberts were traveling southbound on Kings Mills Road in Mason at speeds of 40 to 50 mph in the 25 mph speed zone.  It was alleged that Brummett then, from approximately ten feet, knowingly attempted to cause physical harm to Roberts by shooting a firearm at Roberts just after he and Roberts both turned left onto Center Drive located behind a UDF store in Mason.  Terry Kidd, a pedestrian walking his dog, observed the two vehicles traveling at a high rate of speed in close proximity to each other.  Kidd saw an arm come out of the driver's window of the trailing vehicle and point forward in the direction of the vehicle ahead, then heard a gunshot.  This incident was alleged to have occurred after Brummett discovered Roberts had, just the day before, kissed and "made out" with Brummett's

---

1. The indictment included several other charges.  These charges included, among others, one count of fourth-degree felony improperly handling firearms in a motor vehicle and two counts of first-degree misdemeanor operating a vehicle while under the influence of alcohol.  However, in this appeal, Brummett challenges only his conviction for the single count of second-degree felony felonious assault with its attached three-year and five-year firearm specifications.  We will limit our discussion accordingly.

2. Except for Brummett, this court has changed the names of the other individuals involved in this case. This includes the victim whom Brummett was alleged to have shot at, Roberts.

- 2 -

purported fiancé and mother of Brummett's children.

{¶ 4}   On February 8, 2023, Brummett was arraigned and entered a plea of not guilty to the felonious assault charge and its attached three- and five-year firearm specifications.  The matter ultimately proceeded to a one-day bench trial held on August 10, 2023.  The trial court heard testimony and accepted evidence from a total of three witnesses offered by the state.  This included testimony from the alleged victim, Roberts, and an eyewitness to the shooting, Tony King.  Brummett did not offer any witnesses in his defense.  Upon the conclusion of the trial, the court found Brummett guilty of both the charged felonious assault offense and its attached three- and five-year firearm specifications.  In so doing, the trial court stated, in pertinent part, the following:

> So, here's what I know Mr. Brummett.  I don't even know what all that was with your girlfriend, fiancé, significant other, mother of your children—I don't even know what that was all about, but I know that you went to his work.  I know that you were in the parking lot of his workplace.  I know that you initially followed and then chased Mr. [Roberts] in a vehicle.  I know that you had a gun.  I know that you fired a gun.  The only thing for me to determine which is really the only thing in dispute is whether or not you knew that the act of firing that gun would cause the result of causing physical harm or attempting to cause physical harm to Mr. [Roberts].  I think that the circumstantial evidence does lead me to that conclusion, beyond a reasonable doubt.

{¶ 5}   On September 21, 2023, the trial court held a sentencing hearing where it sentenced Brummett to serve an indefinite sentence of 10 to 11 years in prison, eight years of which was mandatory, less 258 days of jail-time credit.  The trial court also ordered Brummett to pay a mandatory $525 fine and court costs and suspended Brummett's driver's license for a period of one year.  The following month, on October 20, 2023, Brummett filed a timely notice of appeal from his conviction.  Following briefing from both parties, oral argument was held before this court on April 15, 2024.  Brummett's appeal now properly before this court for decision, Brummett has raised two assignments

of error for review.

**{¶ 6}** Assignment of Error No. 1:

**{¶ 7}** APPELLANT-DEFENDANT'S CONVICTION FOR FELONIOUS ASSAULT AND THE THREE AND FIVE-YEAR FIREARM SPECIFICATIONS ARE BASED ON INSUFFICIENT EVIDENCE.

**{¶ 8}** In his first assignment of error, Brummett argues the trial court's decision finding him guilty of the felonious assault offense, along with its attached firearm specifications, was not supported by sufficient evidence. We disagree.

**{¶ 9}** A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Such a challenge "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Therefore, "[i]n a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2018-Ohio-29, ¶ 7, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. This court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt. *State v. Ell*, 12th Dist. Fayette No.

CA2023-03-006, 2023-Ohio-4583, ¶ 16.

{¶ 10} As noted above, the trial court found Brummett guilty of one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony pursuant to R.C. 2903.11(D)(1)(a), with attached three- and five-year firearm specifications in accordance with R.C. 2941.145(A) and 2941.146(A), respectively. Pursuant to 2903.11(A)(2), no person shall "knowingly" cause or attempt to cause "physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Thus, for the trial court to find Brummett guilty of felonious assault in violation of R.C. 2903.11(A)(2), the state was required to prove, beyond a reasonable doubt, that Brummett "knowingly" caused or attempted to cause "physical harm" to Roberts "by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 11} The phrase "physical harm to persons" is defined by R.C. 2901.01(A)(3) to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2923.11(A) defines the term "deadly weapon" to mean "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." It is well established that a firearm, like the Glock 17 handgun used by Brummett in this case, is a "deadly weapon" as that term is defined by R.C. 2923.11(A). *See State v. Murphy*, 2d Dist. Montgomery No. 29559, 2023-Ohio-3276, ¶ 45 (noting that "[i]t is well established that a firearm is a 'deadly weapon'"); *see also State v. Hunt*, 8th Dist. Cuyahoga No. 111892, 2023-Ohio-1977, ¶ 37 (noting the "undisputed evidence" was that a Glock 19 handgun is a "deadly weapon").

{¶ 12} In this case, Brummett does not dispute that he was in possession of a

- 5 -

firearm on the night in question, that he followed Roberts in his vehicle at a high rate of speed as was alleged, or even that he "fired the weapon" during this chase. What Brummett does dispute, and vigorously so, is whether the state proved beyond a reasonable doubt that he "knowingly caused or attempted to cause bodily harm" to Roberts. This is because, according to Brummett, the record is devoid of any evidence indicating his firing of his gun while attempting to chase down Roberts was "anything more than a warning shot." That is to say, Brummet argues that "[w]ithout any evidence of where the gun was aimed or pointed when fired, the fact-finder may not assume it was fired with the intent to cause bodily harm at the alleged victim," Roberts, thereby requiring his conviction for felonious assault be reversed. Brummett cites two cases in support of this position: *State v. Mills*, 62 Ohio St.3d 357 (1992); and *In re R.W.*, 8th Dist. Cuyahoga No. 91923, 2009-Ohio-1255.

{¶ 13} In *Mills*, the Ohio Supreme Court was tasked with determining, among other things, whether there was sufficient evidence to support the defendant's conviction for three counts of felonious assault in violation of R.C. 2903.11(A)(2). *Mills* at 368-369. The charges arose after it was alleged the defendant had either caused or attempted to cause physical harm to three bank tellers during a bank robbery in Cincinnati, Ohio.

{¶ 14} Upon reviewing the evidence, the Ohio Supreme Court upheld the defendant's conviction for just two of those three charges. *Id.* at 369. In so doing, the Ohio Supreme Court noted that while there was sufficient evidence to sustain the jury's verdict finding the defendant guilty of felonious assault when he fired his gun directly at the first teller almost striking him and then, after shooting and killing a different teller, held his gun directly to the second teller's head causing her to believe that he would shoot her next, the evidence was insufficient to sustain the defendant's felonious assault conviction for the third teller because:

> When the initial shot was fired, [the third teller] was standing near a desk area located behind the teller counter and off to one side. She was not in the line of fire when the gunman entered and hid underneath her desk during the remainder of the robbery. The evidence is insufficient to support the finding that [the defendant] knowingly attempted to physically harm [the third teller].

*Id.*

{¶ 15} In *In re R.W.*, the accused, a 16-year-old boy, was adjudicated a delinquent child for committing acts that would be charged as two counts of felonious assault in violation of R.C. 2903.11(A)(2) if committed by an adult. *R.W.*, 2009-Ohio-1255 at ¶ 7. The adjudication arose after it was alleged the juvenile responded "f--- you" and then "pointed a gun straight up in the air and fired four or five times" after being told by a neighbor to get out of her yard and away from her mother's first-floor bedroom window. There was no dispute that the juvenile fired those four or five shots while the neighbor's three-year old niece was standing by a window in the upstairs hallway. *Id.* at ¶ 3. The juvenile appealed challenging both the sufficiency and manifest weight of the evidence introduced to support his adjudication. *Id.* at ¶ 8.

{¶ 16} Upon review of the evidence, the appellate court agreed that the juvenile's adjudication as a delinquent child was not supported by sufficient evidence. The appellate court reached this decision upon finding the facts did not demonstrate that the juvenile "knowingly attempted to cause physical harm to either [the neighbor or the neighbor's three-year-old niece], the alleged victims, when he pointed his gun straight in the air and fired several shots." *Id.* at ¶ 19. In so holding, the appellate court stated:

> It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. This court and others have consistently held that shooting a gun in a place where there is a risk of injury to one or more persons supports the inference that the offender acted knowingly. * * * But in this case, both [the neighbor and her niece] were in the house when [the

- 7 -

juvenile] fired. Although bullets shot in the air will obviously come down somewhere, [the neighbor and her niece] could not have been injured when the bullets came down. As there was no risk of injury to the victims alleged in the indictment, [the juvenile] did not knowingly attempt to cause them physical harm when he fired his gun into the air.

(Internal citations deleted.) *Id.* at ¶ 20-21.

{¶ 17} Brummett argues the facts in this case are analogous to the facts presented in *Mills* and *In re R.W.* because all three cases involve incidents where the alleged victim or victims were never put directly in the line of fire. However, despite Brummett's claims, we find the facts in both *Mills* and *In re R.W.* readily distinguishable from the case at bar.

{¶ 18} Unlike the facts in this case, the facts in *Mills* and *In re R.W.* were not in dispute. For example, in *Mills*, there was no dispute that the defendant neither pointed nor fired his gun in the direction of the third teller, thereby leading the Ohio Supreme Court to reverse on sufficiency of the evidence grounds the defendant's felonious assault conviction as it related to that teller. Similarly, in *In re R.W.*, there was no dispute that the juvenile never pointed or fired his gun at either of the two alleged victims. It was instead undisputed that the juvenile pointed his gun straight up into the air before firing off four or five rounds. Given these facts, the appellate court reversed the juvenile's adjudication as a delinquent child for lack of sufficient evidence upon finding the juvenile did not knowingly cause or attempt to cause physical harm to either of the two alleged victims by firing his gun into the air.

{¶ 19} Here, unlike the facts in *Mills* and *In re R.W.*, one central fact is very much in dispute. That being, whether the state proved beyond a reasonable doubt that Brummett was pointing his firearm at Roberts when he fired his gun, thereby establishing that he knowingly attempted to cause physical harm to Roberts as alleged in the indictment, or whether Brummett was instead pointing his firearm straight up in the air so

as to fire off a so-called "warning shot."

{¶ 20} Upon review of the record, including a lengthy review of the testimony offered by both the alleged victim, Roberts, and the eyewitness to the shooting, King, we find that when viewing the evidence in a light most favorable to the state any rational trier of fact could have found the essential elements of felonious assault in violation of R.C. 2903.11(A)(2) proven beyond a reasonable doubt. This includes a finding that Brummett was pointing his gun at Roberts when he fired his weapon rather than Brummett simply pointing his gun straight up into the air and pulling the trigger. The eyewitness to the shooting, King, specifically testified that he saw Brummett put his arm out his van's driver's side window while holding a gun in his hand "pointing forward towards, you know, the same direction he was traveling" as he followed closing behind Roberts just prior to King hearing a gunshot ring out.

{¶ 21} The above evidence, if believed, was sufficient to establish Brummett knowingly attempted to cause physical harm to Roberts beyond a reasonable doubt. This is because, as noted by this court and others, "'an attempt to cause physical harm may be inferred from the act of firing a gun in the direction of a person.'" *State v. Hubbard*, 12th Dist. Warren No. CA2023-01-014, 2024-Ohio-1315, ¶ 106, quoting *State v. Knowles*, 10th Dist. Franklin No. 16AP-345, 2016-Ohio-8540, ¶ 28; *see State v. Markley*, 3d Dist. Marion No. 9-14-39, 2015-Ohio-1890, ¶ 41 ("firing a gun in a person's direction is sufficient evidence of felonious assault"); *see, e.g., State v. Robinson*, 12th Dist. Fayette No. CA2005-11-029, 2007-Ohio-354, ¶ 20 (affirming appellant's felonious assault conviction where the state introduced evidence indicating appellant fired a gun at another occupied vehicle, which, if believed, was sufficient to prove beyond a reasonable doubt that appellant "knowingly engaged" in conduct that, if successful, would have resulted in physical harm to another). Brummett's argument otherwise lacks merit.

{¶ 22} In so holding, we note that in his appellate brief Brummett also appears to be arguing that because the eyewitness to the shooting, King, did not actually see Brummett fire his weapon that the state did not, and could not, prove beyond a reasonable doubt that he knowingly attempted to cause physical harm to Roberts. This argument is flawed.

{¶ 23} Brummett's argument presupposes that the state was required to introduce direct eyewitness testimony that he was pointing his gun at Roberts when he pulled the trigger to prove beyond a reasonable doubt that he knowingly attempted to cause physical harm to Roberts. But, as is well established, "[a]t trial, any fact, including the perpetrator's identity, may be proven by either direct or circumstantial evidence." *State v. Jordan*, 8th Dist. Cuyahoga No. 112506, 2024-Ohio-972, ¶ 24. This necessarily includes whether the defendant acted knowingly. *State v. Jordan*, Slip Opinion No. 2023-Ohio-3800, ¶ 26 ("the state can prove knowledge through either direct or circumstantial evidence"); *see, e.g., State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 30 (evidence presented by the state, albeit circumstantial, was sufficient to prove appellant "acted knowingly—not accidentally—when he kicked [a police officer] in the face").

{¶ 24} "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts." *State v. Raleigh*, 12th Dist. Clermont Nos. CA2009-08-046 and CA2009-08-047, 2010-Ohio-2966, ¶ 46. Therefore, rather than just through direct eyewitness testimony as Brummett suggests within his appellate brief, "[t]o determine whether [the] appellant acted knowingly, [the appellant's] state of mind must be determined from the totality of the circumstances surrounding the crime." *State v. Johns*, 12th Dist. Clermont No. CA2003-07-055, 2004-Ohio-3671, ¶ 24. This includes consideration of both the direct evidence and circumstantial evidence

presented at trial. To the extent Brummett claims otherwise, such argument lacks merit.

{¶ 25} Just as it is well established that any fact may be proven by either direct or circumstantial evidence at trial, it is equally well established that circumstantial evidence has the same probative value as direct evidence. *State v. Scott*, 171 Ohio St.3d 651, 2022-Ohio-4277, ¶ 21; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"). There are in fact some instances where certain facts can be established only through circumstantial evidence. *State v. Trafton*, 12th Dist. Warren No. CA2022-06-040, 2023-Ohio-122, ¶ 21. For example, the fact that an infant was healthy until being left alone with the defendant is circumstantial evidence that the defendant abused the infant while the infant was in the defendant's custody. *State v. Evans*, 12th Dist. Warren No. CA2017-04-049, 2018-Ohio-916, ¶ 65. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶ 26} The evidence presented by the state in this case, albeit largely circumstantial given the lack of any eyewitnesses who saw Brummett fire his weapon, does just that. "A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence." *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-01-002, 2021-Ohio-3781, ¶ 41. Therefore, to the extent Brummett argues that the state did not, and could not, prove beyond a reasonable doubt that he knowingly attempted to cause physical harm to Roberts because the eyewitness to the shooting, King did not actually see him fire his weapon, such argument is meritless. Accordingly, finding no merit to any of the arguments raised by Brummett herein, Brummett's first assignment of error lacks merit and is overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} APPELLANT-DEFENDANT'S CONVICTION FOR FELONIOUS ASSAULT AND THE THREE-YEAR AND FIVE-YEAR SPECIFICATIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 29} In his second assignment of error, Brummet argues the trial court's decision finding him guilty of the charged felonious assault offense and its attached three- and five-year firearm specifications was against the manifest weight of the evidence. We disagree.

{¶ 30} "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 18, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶ 31} But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10. When reviewing a jury verdict, this may occur "only when there is unanimous disagreement with the verdict." *State v. Marcum*, 12th Dist. Preble No. CA2015-04-011,

2016-Ohio-263, ¶ 10, citing *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist.1999). However, "convictions resulting from a bench trial may be reversed by a majority of the panel." *State v. Williams*, 8th Dist. Cuyahoga No. 107249, 2019-Ohio-992, ¶ 12.

**{¶ 32}** To support this assignment of error, Brummett argues his conviction was against the manifest weight of the evidence because the trial court "stated it was relying on circumstantial evidence, rather than the direct eye witness testimony" to find him guilty. However, while it may be true that the trial court did make mention that it was the "circumstantial evidence" presented in this case that ultimately led it to find Brummett knowingly attempted to cause physical harm to Roberts by pointing his weapon at Roberts and pulling the trigger, the significance that Brummett places on the trial court's statement is misplaced. That is to say, notwithstanding Brummett's assertion to the contrary, nowhere within the record did the trial court find the eyewitness testimony offered by King not credible and not worthy of belief.

**{¶ 33}** This includes King's testimony that he saw Brummett put his arm out his van's driver's side window with a gun in his hand "pointing forward towards, you know, the same direction he was traveling" while following closing behind Roberts in his SUV just prior to hearing a gunshot. This also includes King's testimony that from "a couple hundred yards" away he "saw those two vehicles traveling again, at a high rate of speed, brief stop, turn right, turn left and then an arm come out the window and a gunshot being fired." This is in addition to King's testimony that, "To be completely honest, as I remember it, as I'm just being completely honest—as I remember, I remember forward," when asked by Brummett's trial counsel if he was "positive" that he saw Brummett holding a gun out of his van's driver's side window "pointed forward" at Roberts rather than up or down.

**{¶ 34}** Given the trial court's verdict in this case, the trial court clearly found some,

- 13 -

if not all, of King's testimony set forth above reliable and dependable so as to be considered trustworthy. This includes King's testimony elicited by Brummett's trial counsel wherein King testified that he was "positive" he saw Brummett holding a gun out of his van's driver's side window "pointed forward" at Roberts rather than up or down. This was not error.

{¶ 35} "[A]s the trier of fact, the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of witnesses and the weight to be given the evidence." *State v. Himes*, 12th Dist. Butler No. CA2023-03-030, 2023-Ohio-3561, ¶ 27. This necessarily includes King, the eyewitness to the shooting, as well as the alleged victim, Roberts. "A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution." *Baker*, 2020-Ohio-2882 at ¶ 31. This holds true even in cases like this where the defendant is being tried for felonious assault in violation of R.C. 2903.11(A)(2). *See State v. Brooks*, 1st Dist. Hamilton No. C-220102, 2023-Ohio-846, ¶ 23-27 (appellant's felonious assault conviction was not against the manifest weight of the evidence where the "trial court heard all of the testimony and found the victims' testimony to be more credible then the alibi testimony of [appellant's] father"). To the extent Brummett suggests otherwise, such argument is meritless. Therefore, finding no merit to Brummett's arguments raised herein, Brumett's second assignment of error also lacks merit and is overruled.

{¶ 36} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.