[Cite as *State v. Lark*, 2018-Ohio-4940.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

STATE OF OHIO,                                    :

    Appellee,                                    :        CASE NO. CA2018-03-004

                                      :        O P I N I O N
- vs -                                                   12/10/2018

                                        :

VERCIE L. LARK,                                  :

    Appellant                                   :

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20170125

Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington C.H., Ohio 43160, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Vercie L. Lark, appeals from his convictions in the Fayette County Court of Common Pleas for aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine. For the reasons set forth below, we affirm appellant's convictions.

{¶ 2} On August 18, 2016, appellant was booked into the Fayette County Jail and

was placed in cell number 338, which was commonly known as the "12-man cell." Shortly after appellant's placement in this cell, officers at the jail received a tip from another inmate, C.C., that appellant and inmate James Tanner had illegal narcotics in the 12-man cell. Fayette County Sheriff's Deputies employed at the jail conducted a search of the cell on August 27, 2016. The deputies recovered a baggie containing three smaller baggies near appellant's bunk, located by the shower area. One of the smaller baggies contained a brown substance, another baggie contained a crystalline substance, and the third baggie contained an off-white substance. Testing of these substances by the Ohio Bureau of Criminal Investigation ("BCI") indicated that the brown substance was fentanyl, the crystalline substance was methamphetamine, and the off-white substance was cocaine.

{¶ 3} Appellant was subsequently indicted on one count of aggravated trafficking in fentanyl, one count of aggravated trafficking in methamphetamine, one count of trafficking in cocaine, one count of aggravated possession of fentanyl, one count of aggravated possession of methamphetamine, one count of possession of cocaine, and three counts of the illegal conveyance of drugs of abuse onto the grounds of a specified government facility. Appellant pled not guilty to the charges, and a jury trial commenced on February 15, 2018.

{¶ 4} At trial, the state presented testimony from C.C., four officers who were involved in the August 27, 2016 search of the 12-man cell, and the BCI analysist who tested the substances recovered during the search. C.C. testified he entered the Fayette County Jail in July 2016, and was placed in the 12-man cell.[1] C.C. stated that prior to appellant being placed in the 12-man cell, there had not been any drug use in the cell. However, after appellant's arrival in the cell, heroin, methamphetamine, and cocaine were being passed around and used by the inmates. C.C. observed a change in behavior by inmate Tanner

---

1. The 12-man cell contained six bunk-beds, for a total of 12 beds, two tables, and an open bathroom area that had a toilet and shower.

- 2 -

after appellant's arrival in the cell; Tanner became more outgoing and appeared happy after interacting with appellant. C.C. observed that Tanner had his own bag of methamphetamine "for a small period of time."

{¶ 5} Deputy Kyle Lower testified that he was one of the officers who searched the 12-man cell on August 27, 2016. Lower explained he was assigned to isolate and detain appellant before appellant's bed and the nearby area could be searched. Upon entering the 12-man cell, Lower observed appellant lying in his bed, which was located on the bottom bunk of the bed closest to the cell's shower area. When appellant saw Lower approach, appellant turned away from Lower and tried to get out of his bed on the side furthest away from Lower. Lower grabbed appellant and told him to exit the bunk on the side the deputy was standing on. As appellant did so, Lower saw appellant make a tossing motion with his hand. Lower handcuffed appellant and had him taken out of the cell by another officer. Lower then searched the area by appellant's bunk and found a baggie containing a white substance on the floor. Lower turned the baggie over to Sergeant Charles Kyle.

{¶ 6} Deputy Jason Havens testified that he is a K-9 handler. On August 27, 2016, Havens walked his narcotics certified K-9 through the 12-man cell. The K-9 alerted on the corner of the bottom bunk located closest to the shower area. This bunk was identified as appellant's bunk.

{¶ 7} Deputy Christopher Self testified he was also involved in the search of the 12-man cell. Self secured Tanner so that the cell could be searched. Self, along with Sergeant Kyle, escorted Tanner and appellant out of the 12-man cell and secured the two inmates in another area of the jail. Self then returned to the 12-man cell to assist in the search. Upon returning to the cell, Self observed a white baggie located under appellant's bunk. Self testified another officer, Deputy Wright, picked up the baggie and gave it to Sergeant Kyle.

{¶ 8} Sergeant Kyle testified that after being advised by an inmate that appellant and

Tanner were in possession of narcotics inside the 12-man cell, he oversaw the August 27, 2016 search of the cell. Kyle denied that Deputy Lower had handed him a baggie of evidence located during the search. Rather, Kyle testified, it was Deputy Wright that turned over a baggie of narcotics that had been found in the cell near appellant's bed. The baggie was "cloudy," and it held three smaller baggies inside of it.

{¶ 9} Kyle explained that at the time of the search, there were a number of inmates housed in the 12-man cell. Appellant, who was nicknamed "Bubby," had been placed in the 12-man cell on August 18, 2016. Tanner, who was nicknamed "J-Money," had been placed in the cell shortly after being booked into the jail on August 3, 2016. Two other inmates, S.W. and G.B., had also been placed in the 12-man cell after being booked into the jail on August 3, 2016 and June 29, 2016, respectively. Kyle testified that Tanner's bed inside the 12-man cell was on a top bunk near the front of the cell, well-away from the shower area where appellant's bunk was located.

{¶ 10} Kyle testified that a portion of the search of the 12-man cell was recorded. A six-minute recording of the search was admitted into evidence. The video ended before Deputy Havens arrived with his K-9 to search the cell and it does not depict Deputy Wright finding a bag of narcotics under appellant's bed, as Deputy Self described. The video did, however, record the beginning of the search, when appellant was on his bed as Deputy Lower approached to restrain him. The video shows Deputy Lower shaking out appellant's bed linens, finding a small baggie on the floor near appellant's bunk, and picking up the baggie after appellant was escorted from the cell.

{¶ 11} Michele Taylor, a forensic scientist at BCI, testified that the substances recovered from the August 27, 2016 search were tested at BCI. The baggie holding the brown substance contained 3.45 grams of fentanyl, the baggie holding the crystalline substance contained 5.42 grams of methamphetamine, and the baggie holding the off-white

substance contained 0.33 gram of cocaine.

{¶ 12} Following the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court granted appellant's motion in part, finding the state failed to present sufficient evidence to sustain a conviction for aggravated trafficking in fentanyl, aggravated trafficking in methamphetamine, and trafficking in cocaine. The court denied appellant's motion for acquittal on the remaining charges.

{¶ 13} Appellant then presented testimony by two inmates, G.B. and S.W., who had been housed in the 12-man cell in August 2016. G.B. testified that in August 2016, he saw "J-Money" with drugs and "J-Money" gave him methamphetamine. G.B. did not see appellant with any drugs. G.B. believed that at the time of the August 27, 2016 search, he had been using methamphetamine in the jail for approximately 10 days. S.W. likewise testified that the drugs found in the 12-man cell were "J-Money's" drugs as "J-Money" had methamphetamine in the cell.

{¶ 14} Following G.B.'s and S.W.'s testimony, the trial court dismissed the jury so that it could consider appellant's request to introduce into evidence a written statement purportedly made by James Tanner on August 29, 2016, in which Tanner stated, "I had the drugs on me on the 27th of August. I was in my bunk and tossed them down to my right hoping to get rid of them or possibly not be responsible. * * * [T]hey were in one bag." Defense counsel argued the statement was admissible pursuant to Evid.R. 804(B)(3) as a statement against interest. The trial court ultimately found that Tanner's written statement was not admissible as a hearsay exception as defense counsel failed to demonstrate the reliability of the statement or that Tanner was unavailable to testify at trial.

{¶ 15} After the court denied appellant's request to introduce the written statement, the defense rested. The matter was submitted to the jury, who returned not guilty verdicts on the three charges of the illegal conveyance of drugs of abuse onto the grounds of a specified

government facility and guilty verdicts on the charges of aggravated possession of fentanyl, aggravated possession of methamphetamine, and possession of cocaine. Appellant was sentenced to 12 months in prison for the aggravated possession of fentanyl, 30 months in prison for the aggravated possession of methamphetamine, and nine months in prison for possession of cocaine. The trial court ordered that the prison terms be served consecutively, for an aggregate prison term of 51 months.

{¶ 16} Appellant timely appealed his convictions, raising three assignments of error for review. For ease of discussion, we will address appellant's first and second assignments of error together.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] CRIM.R. 29 MOTION FOR ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 21} In his first and second assignments of error, appellant argues that the trial court erred by denying his Crim.R. 29(A) motion for acquittal based on insufficient evidence and that his convictions for the aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine were against the manifest weight of the

evidence.

{¶ 22} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶ 23} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 25} Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 26} Appellant was found guilty of aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine, all in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." With respect to appellant's possession of methamphetamine, where the "amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is felony of the third degree, and there is a presumption for a prison term for the offense." R.C. 2925.11(C)(1)(b).

{¶ 27} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-

103, 2016-Ohio-1486, ¶ 12. Constructive possession exits when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22. "Constructive possession may be proven by circumstantial evidence alone." *Fultz* at ¶ 12. Absent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession. *Graves* at ¶ 22. "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." *Fultz* at ¶ 13.

{¶ 28} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Further, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶ 29} Appellant argues that the state presented "conflicted testimony" by the deputies as to which officer located the drugs and how many bags of drugs were actually found during the search. Appellant contends that this conflicting testimony combined with the state's failure to present any evidence directly placing the drugs found in the cell in appellant's possession is a "fatal flaw" to the state's case and should have prevented a guilty verdict. We disagree, as it was within the province of the jury, as the trier of fact, to take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony. *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 24. *See also State v. Antill*, 176 Ohio St. 61, 67 (1964) (recognizing that the jury, as the "sole judge of the weight of the evidence and the credibility of witnesses," may "believe or disbelieve any witness or accept part of what a witness says and reject the

rest").

{¶ 30} In the present case, after reviewing the record, weighing inferences and examining the credibility of the witness, we find that appellant's convictions for aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine are supported by sufficient evidence and are not against the weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the possession offenses proven beyond a reasonable doubt. The state presented testimony that after appellant entered the 12-man cell on August 18, 2016, drugs appeared in the 12-man cell. When a search was conducted on August 27, 2016, Deputy Lower saw appellant make a tossing motion. Lower then searched appellant's bed and the area nearby it and found a baggie containing a white substance. The baggie was turned over as evidence and was found to contain three separate baggies. Subsequent testing of the substances found in the baggies by BCI indicated the brown substance was 3.45 grams of fentanyl, the crystalline substance was 5.42 grams of methamphetamine, and the off-white substance was 0.33 gram of cocaine. Further, in addition to Lower's testimony about finding the drugs near the shower area located by appellant's bunk, the jury heard testimony from Deputy Havens that his K-9 alerted on the appellant's bunk, near the corner of the bunk closest to the shower area where Lower found the drugs.

{¶ 31} These facts – appellant's tossing movement, the location where the drugs were found, and the fact that the narcotics K-9 alerted on appellant's bunk near the area where the drugs were located – are circumstantial evidence that appellant knowingly possessed the methamphetamine, fentanyl, and cocaine in question. As we have previously held, "[c]ircumstantial evidence has the same probative value as direct evidence." *State v. Evans*, 12th Dist. Warren No. CA2017-04-049, 2018-Ohio-916, ¶ 65, citing *State v. Young*, 12th Dist. Butler No. CA2016-10-201, 2018-Ohio-701, ¶ 61; and *Jenks*, 61 Ohio St.3d at 272.

Therefore, given the evidence presented at trial, we find that the jury did not lose its way and create such a manifest miscarriage of justice such that appellant's convictions for aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine must be reversed and a new trial ordered. As appellant's convictions were not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt and to overcome appellant's Crim.R. 29 motion. *See Jones*, 2013-Ohio-150 at ¶ 19. Appellant's first and second assignments of error are overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT ERRED IN DENYING THE ADMISSION DURING [APPELLANT'S] CASE-IN-CHIEF OF A WRITTEN STATEMENT FROM JAMES TANNER UNDER EVID.R. 804(B)(3) THEREBY DENYING [APPELLANT] A FAIR TRIAL IN VIOLATION OF HIS RIGHTS TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 34} In his third assignment of error, appellant contends the trial court erred when it excluded from evidence the written statement James Tanner purportedly made on August 29, 2016. Appellant maintains that the statement should have been admitted as a hearsay exception under Evid.R. 804(B)(3) as a statement against interest since Tanner was unavailable to testify and the circumstances surrounding his statement indicated the trustworthiness of the statement.

{¶ 35} "[A] trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever*, 64 Ohio St.3d 401, 410 (1992). *See also State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 92. As a trial court has broad discretion in the admission or exclusion of evidence, unless the trial court has clearly abused

- 11 -

its discretion and the defendant has been materially prejudiced thereby, an appellate court will not disturb the trial court's decision. *State v. Smith*, 12th Dist. Warren No. CA2010-05-0047, 2011-Ohio-1476, ¶ 69, citing *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002). An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 13.

**{¶ 36}** Appellant sought to introduce the written statement Tanner purportedly made on August 29, 2016 to Deputy Brian Carlson. On this date, Tanner was said to have been advised of his *Miranda* rights before waiving his rights and making the following written statement: "I had the drugs on me on the 27th of August. I was in my bunk and tossed them down to my right hoping to get rid of them or possibly not be responsible. * * * [T]hey were in one bag." When questioned about whether he was asked to write a confession to the possession of drugs, Tanner wrote, "Not at all."

**{¶ 37}** The trial court excluded Tanner's written statement from being introduced into evidence due to the requirements of Evid.R. 804(B)(3) and 804(A)(5). "Under Evid.R. 804(B)(3), the hearsay rule will not exclude a statement against interest that tends to expose the declarant to criminal liability and that is corroborated by circumstances clearly indicating the truthworthiness of the statement." *State v. Hiles*, 4th Dist. Ross No. 08CA3080, 2009-Ohio-6602, ¶ 11. *See also State v. Watson*, 12th Dist. Butler No. CA2016-08-159, 2017-Ohio-1403, ¶ 34. However, for Evid.R. 804(B)(3) to apply, the declarant must be unavailable as a witness. *See* Evid.R. 804(B)(3).[2] Evid.R. 804(A)(5) provides that a declarant is

---

2. **{¶ a}** Evid.R. 804 provides, in relevant part, as follows:

> **{¶ b}** **(B) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> **{¶ c}** * * *

"unavailable as a witness" if the declarant "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means."

**{¶ 38}** "A declarant is not 'unavailable' within the meaning of Evid.R. 804(A) unless the party seeking admission of the hearsay evidence has made 'reasonable efforts in good faith to secure his presence at trial.'" *State v. Jenkins*, 4th Dist. Lawrence No. 05CA7, 2006-Ohio-2546, ¶ 38, quoting *State v. Keairns*, 9 Ohio St.3d 228, 230 (1984). "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *Keairns* at paragraph three of the syllabus. *See also State v. Tabor*, 12th Dist. Warren No. CA2011-07-076, 2012-Ohio-4642, ¶ 12. The measures the proponent of the statement must undertake in order to fulfill its burden of reasonableness and good faith depend on the facts and circumstances of each case. *Tabor* at ¶ 14.

**{¶ 39}** In the present case, defense counsel testified about the steps he had taken in an attempt to procure Tanner's presence at trial. Defense counsel testified that on November 2, 2017, after learning Tanner had been released on APA supervision, he contacted the APA to inquire about Tanner's whereabouts. Defense counsel was given Tanner's parole officer's name and phone number. Defense counsel called the parole officer and left a voicemail for the officer. Tanner's parole officer did not return the call. On January

---

**{¶ d}** **(3) Statement against interest.** A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement.

25, 2018, defense counsel placed a second phone call to Tanner's parole officer. Defense counsel again left a message with the officer, but the officer never called him back. Defense counsel discussed Tanner's whereabouts with appellant and was advised that "the word * * * was [Tanner] was homeless." Defense counsel ran Tanner through Westlaw's investigative portal but was unable to obtain a "good address" for him. Defense counsel stated he did not attempt to subpoena Tanner for trial and stated that, as of the February 15, 2018 trial date, he believed Tanner was still on APA supervision.

{¶ 40} After hearing the foregoing testimony, the trial court determined that appellant failed to demonstrate Tanner was unavailable as contemplated by Evid.R. 804. The record supports the trial court's determination that reasonable efforts in good faith were not made to secure Tanner's presence at trial. Running Tanner's name through an investigative portal and placing two phone calls to Tanner's known parole officer over the course of three months was insufficient to satisfy the requirements of Evid.R. 804(A)(5). Although the proponent of a statement does not need to exhaust every avenue of inquiry in an effort to obtain the declarant's presence at trial, reasonable efforts must be made. *See Tabor*, 2012-Ohio-4642 at ¶ 13-14. Here, there was no evidence introduced that defense counsel sent a letter or fax to the APA requesting information on Tanner's whereabouts, scheduled an appointment to speak with Tanner's parole officer, placed a visit to Tanner's last known address, or attempted to serve Tanner with a subpoena at said address. Given these facts, the trial court did not abuse its discretion in determining that appellant failed to make reasonable efforts to secure Tanner's presence at trial.

{¶ 41} As appellant failed to demonstrate Tanner's unavailability as a witness as contemplated by Evid.R. 805(A)(5), we find that the trial court did not err in excluding Tanner's written statement from evidence. Further, because Tanner was not "unavailable as a witness," this court need not review the trial court's finding that appellant failed to

- 14 -

demonstrate the trustworthiness or reliability of Tanner's written statement. Appellant's third assignment of error is, therefore, overruled.

**{¶ 42}** Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.