[Cite as *State v. Hall*, 2018-Ohio-5300.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-07-006 |
| | : | O P I N I O N |
| - vs - | | 12/28/2018 |
| | : | |
| ROCKY J. HALL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM EATON MUNICIPAL COURT
Case No. 2017 CRB 01025

Nicole L. Rutter-Hirth, Special Prosecutor, 2541 Shiloh Springs Road, Dayton, Ohio 45426, for appellee

Lyons & Lyons Co., LPA, Jonathan N. Fox, 8310 Princeton Glendale Road, West Chester, Ohio 45069, for appellant

**PIPER, J.**

{¶ 1} Appellant, Rocky Hall, appeals his conviction in the Eaton Municipal Court for improper handling of a firearm in a motor vehicle.[1]

{¶ 2} An Ohio State Highway Patrol trooper was patrolling S.R. 122 in Preble County

---

1. Pursuant to Loc.R. 6(A) we sua sponte remove this case from the accelerated calendar for the purpose of issuing this written opinion.

when he observed a pickup truck speeding and the driver not wearing a seatbelt. The trooper performed a traffic stop and later identified the driver as Hall. Immediately upon approaching the truck, Hall informed the trooper that he had a concealed carry weapon ("CCW") permit and told the trooper that he was placing his weapon on the dashboard for the trooper's safety.

{¶ 3} The trooper informed Hall of his observation of speeding and failure to wear a seatbelt. The trooper told Hall that he would issue a ticket for failure to wear a seatbelt, but would only issue a warning for the speeding. The trooper then returned to his cruiser to verify Hall's information, at which time, he was informed that Hall's Ohio CCW permit was expired. When confronted with the fact that the Ohio CCW permit was expired, Hall informed the trooper that he also maintained a CCW permit from Florida and produced a reciprocity agreement between Ohio and Florida regarding the states' agreement to honor each other's CCW permits. However, the trooper declined Hall's offer to review the reciprocity agreement. The trooper, instead, issued a seat belt ticket and released Hall.

{¶ 4} Hall was arraigned on the seat belt charge, and he entered a not guilty plea. Hall refused to waive his speedy trial rights, and the matter proceeded toward trial. However, Hall later asserted to the prosecutor that his speedy trial rights had been violated on the seatbelt charge. The prosecutor informed Hall that he would soon be issued a speeding citation, and Hall was in fact charged with speeding the next day. Hall was also charged with improper handling of a firearm in a motor vehicle. Hall pled not guilty to all charges.

{¶ 5} The trial court conducted a bench trial and the state presented the testimony of the trooper who performed the traffic stop. The trooper admitted that he never saw a firearm on the day of the traffic stop and that he did not ask to see Hall's Florida CCW permit or the reciprocity agreement between Ohio and Florida. Hall then testified in his own defense that he displayed his Florida CCW permit to the trooper and that he made the reciprocity

agreement between Florida and Ohio available to the trooper.

{¶ 6} The trial court found Hall not guilty of the seat belt and speeding charges, but found him guilty of improper handling of a firearm in a motor vehicle. Hall now appeals his conviction, raising the following assignment of error:

{¶ 7} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Hall argues in his assignment of error that his conviction was against the manifest weight of the evidence.

{¶ 9} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 24.

{¶ 10} Hall was convicted of improper handling of firearm in a vehicle in violation of R.C. 2923.16(C), which provides,

> No person shall knowingly transport or have a firearm in a motor vehicle, unless the person may lawfully possess that firearm under applicable law of this state or the United States, the firearm is unloaded, and the firearm is carried in one of the following ways:

**(1)** In a closed package, box, or case;

**(2)** In a compartment that can be reached only by leaving the vehicle;

**(3)** In plain sight and secured in a rack or holder made for the purpose;

**(4)** If the firearm is at least twenty-four inches in overall length as measured from the muzzle to the part of the stock furthest from the muzzle and if the barrel is at least eighteen inches in length, either in plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight.

{¶ 11} After reviewing the record, we find that Hall's conviction was against the manifest weight of the evidence. The Ohio statute criminalizing improper handling of a firearm in a vehicle required the state to prove that Hall knowingly transported a firearm in his truck without being lawfully able to possess the firearm under Ohio's applicable law, that the firearm was loaded, and that Hall failed to carry the firearm in an approved manner. The state failed to prove any of these elements.

{¶ 12} Instead, the trooper's testimony demonstrates that he never saw a firearm in Hall's possession on the day of the traffic stop, which demonstrates the state's failure to prove several of the required elements. Specifically, during trial, the trooper was asked whether he had "any memory of the status of that firearm? Loaded or unloaded?" The trooper responded, "I don't know. I never saw it." When asked to clarify the 'it' in his testimony, the trooper responded, "the gun, right." The trooper was then asked, "when Mr. Hall tells you there's a gun in the car, you didn't look for it?" The trooper then responded, "no, I did not." The trooper later testified that he did not take possession of the firearm and had "no idea if it was loaded or unloaded."

{¶ 13} The trooper's own testimony clearly shows that the trooper did not know whether the firearm was loaded or whether Hall was properly carrying the firearm in a way

- 4 -

proscribed in the applicable statute because he never saw the gun on the day of the traffic stop.

{¶ 14}  Moreover, the state failed to prove that Hall was not permitted to carry a firearm.  While it is uncontested that Hall's Ohio CCW permit was expired, Hall clearly indicated to the trooper that he maintained a valid Florida CCW permit and that Ohio and Florida recognized the validity of each other's CCW permits.  The trooper verified during his testimony that Hall showed him "a piece of paper" while discussing the reciprocity agreement.  A video of the trooper's dash camera recording was shown during Hall's trial, during which, Hall is clearly heard offering to show the reciprocity agreement between Florida and Ohio, and the trooper declining the offer.

> [Hall]  Here's the Reciprocity Agreement * * * between the State
> of Ohio and Florida.
>
> [Trooper]  Ok.
>
> [Hall] Do you want to read it?
>
> [Trooper]  No that's alright.

The trooper expressly testified that he took Hall's "word" that he had a valid Florida CCW permit rather than inquiring about it further.

{¶ 15}  Instead of determining whether Hall had a valid CCW permit by asking to see the Florida permit or determining whether the reciprocity agreement was valid, the trooper addressed how Hall could resolve the seat belt citation.  However, nowhere on the video is the trooper heard or seen asking for Hall's Florida CCW permit, asking to see the firearm to determine whether it was loaded, or asking Hall how the firearm was carried.  What the video *does* show is Hall offering documentation to the trooper to show he was legally permitted to carry a weapon, and that Ohio recognized such right, but the trooper declining the offer.

{¶ 16}  The facts herein create the exceptional case where the evidence presented

weighs heavily in favor of acquittal and where the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Moreover, the state's failure to produce any evidence whatsoever to support the charge necessitates the finding that Hall is entitled to a directed verdict of acquittal. Therefore, we reverse Hall's conviction for improper handling of a firearm, and order that he be discharged.

{¶ 17} Judgment reversed, and Hall is discharged.

S. POWELL, P.J., and HENDRICKSON, J., concur.