[Cite as *State v. Robinson*, 2019-Ohio-3144.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                                    :

    Appellee,                                    :          CASE NO. CA2018-08-163

                             :          O P I N I O N
- vs -                                     8/5/2019

                             :

GREGORY W. ROBINSON,                    :

    Appellant.                                    :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-01-0129

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Gregory W. Robinson, appeals from his conviction in the Butler County Court of Common Pleas for robbery. For the reasons set forth below, we affirm appellant's conviction.

{¶ 2} On February 14, 2018, appellant was indicted on one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree. The charge arose out of

allegations that on November 3, 2017, appellant and another male attacked J.A., a 13-year-old boy, in an alley in Hamilton, Ohio. Appellant and the other male punched and kicked J.A. before stealing his backpack and sneakers and running off. The two male assailants were accompanied by a female.

{¶ 3} Appellant pled not guilty to the charge and a two-day jury trial commenced in June 2018. The state presented testimony from J.A., J.A.'s mother, and two officers from the city of Hamilton's Police Department. J.A. testified that on November 3, 2017, he was walking to his home on Lockwood Avenue in Hamilton, Ohio after leaving his friend's house nearby. J.A. was walking home at dusk and decided to take a shortcut through an alley. In the alley, J.A. was approached by two males and a female. J.A. recognized one of the males as appellant, his 18-year-old neighbor who lived three houses down on Lockwood Avenue. Appellant was wearing a hoodie, one that J.A. had seen appellant wear before, and a baseball cap. According to J.A., the hoodie and hat did not obscure appellant's face. Appellant's face was visible due to the streetlights that were illuminating the area.

{¶ 4} Appellant and the other male surrounded J.A. in the alley while the female stood about five feet away. Appellant asked J.A., "Don't I know you from somewhere?" J.A. believed the males were going to "try and do something" to him, so he said "no" and attempted to run away. However, appellant and the other male grabbed J.A.'s backpack and threw J.A. to the ground. Appellant and the other male began to punch and kick J.A. Appellant took J.A.'s Nike Huarache sneakers off J.A.'s feet. As appellant and the other male continued to punch and kick J.A., striking him in the face, back of the head, and all over his body, the other male took J.A.'s backpack. The backpack had J.A.'s school items, bus pass, house keys, and sweatpants in it.

{¶ 5} After taking J.A.'s belongings, appellant and his two companions ran away from the alley. J.A. then ran home, shoeless, and his mother called 9-1-1. J.A. was taken by

ambulance to the hospital, where he received stitches in his upper and lower lips. J.A. also sustained injuries to the back of his head and a concussion.

{¶ 6} Approximately three weeks later, on November 27, 2017, J.A. gave a written statement to Detective Jon Richardson. Less than a month later, on December 21, 2017, J.A. identified appellant from a photo lineup.

{¶ 7} J.A.'s mother testified that when J.A. arrived home on November 3, 2017, he was hysterical and was crying. J.A. was "covered in blood from his face" and had no shoes on. In addition to cuts on his lips, J.A. had knots on the back of his head, and scrapes and bruises on his arms and legs. J.A. was in pain for a week after the incident.

{¶ 8} Detective Richardson testified that he was assigned to the case on November 6, 2017. After speaking with J.A. about the incident, the detective created a photo lineup with appellant's photograph included. The lineup was administered to J.A. by a "blind administrator" on December 21, 2017, and J.A. identified appellant as one of the perpetrators of the assault and theft.[1]

{¶ 9} During his investigation, Detective Richardson was contacted by appellant's stepfather and by Tasia Upshaw, a woman who claimed to be the female present during the robbery. Appellant's stepfather asserted that Christian Alvarez was one of the males involved in the robbery. Detective Richardson created a second lineup containing Alvarez's photograph, and the photo lineup was administered to J.A. by a "blind administrator" on January 29, 2018. J.A. did not recognize anyone in the lineup and did not select Alvarez's photograph. Alvarez was significantly larger than appellant. He was six feet tall and 200 pounds, whereas appellant was only five feet, seven inches tall and 120 pounds.

---

1. As Detective Richardson explained at trial, the "blind administrator" who conducted the photo lineup was a fellow police officer who had no knowledge of the case and who did not know the identity of the suspect. *See, e.g.,* R.C. 2933.83(A)(2).

{¶ 10} Upshaw contacted Detective Richardson by phone twice during the investigation, claiming that appellant was not involved in the robbery. The detective testified that there were "huge discrepancies" in Upshaw's statements. Upshaw did not identify herself during her first phone call with Detective Richardson, but told him she had been present for the robbery. However, Upshaw asked him whether the robbery had occurred in a parking lot or an alley. After Detective Richardson told Upshaw that she would know this fact if she had been present for the robbery, Upshaw hung up on the detective.

{¶ 11} During Upshaw's second phone call with the detective, Upshaw identified Alvarez and Nathan Karr, her ex-boyfriend, as the two assailants who robbed J.A. Detective Richardson testified that he did not prepare a photo lineup with Karr's picture as Karr did not match J.A.'s description of either suspect.

{¶ 12} In May 2018, after being provided with purported alibi witnesses for appellant, Detective Richardson attempted to make contact with Donny Hensler and Cody Brewer. He went to Hensler's and Brewer's homes on two occasions, knocked on their doors, and left his business card with a request that the men contact him. Neither Hensler nor Brewer contacted the detective.

{¶ 13} Upshaw, Brewer, and appellant testified on behalf of appellant's defense. Upshaw testified she had been present in the alley on November 3, 2017 when Alvarez and Karr attacked J.A. and stole his shoes and backpack. Upshaw claimed appellant had not been present during the robbery. On cross-examination, Upshaw admitted that her sister is best friends with appellant's sisters and that she only came forward after appellant was arrested and his family asked for her help.

{¶ 14} Upshaw first described J.A. as the "little boy" in the alley. However, when asked why she had not helped J.A. as he was being attacked, Upshaw claimed she "didn't even know he was 13. I thought he was, like, 30." Upshaw also claimed that while she was

close enough to hear what was being said during the robbery, she "couldn't really see what was going on" because she had her back turned during the robbery. According to Upshaw, after the robbery, she, Alvarez, and Karr walked to appellant's house. Alvarez briefly went inside while she and Karr waited on the porch. The three then left appellant's house.

{¶ 15} Brewer testified as an alibi witness for appellant. Brewer stated he was a close family friend of appellant's family, and he lived on Lockwood Avenue in the house immediately next door to appellant's house. Brewer claimed that on November 3, 2017, he was with appellant "all day long" doing yard work. Brewer testified that he, Hensler, Hensler's son Levi, and appellant had cut down bushes in his backyard and held a bonfire before going inside around 2:00 p.m. to "watch TV, [and] go on about [their] day." Brewer testified appellant went to bed around 4:00 or 5:00 p.m., and later that evening, Alvarez, Karr, and Upshaw showed up at appellant's door. Alvarez entered the home with a blue backpack, went upstairs to speak with appellant, and was told by appellant to leave.

{¶ 16} On cross-examination, Brewer testified that nobody else was present that day except him, Hensler, Levi, and appellant. He claimed that if anybody stated appellant's family was present, it would be a lie.

{¶ 17} Appellant testified at trial that he did not attack or rob J.A. on November 3, 2017. Appellant claimed that on that date he had been with Brewer and Hensler chopping wood, having a fire, and watching TV before going to bed.

{¶ 18} Following appellant's testimony, the defense rested and the state called Detective Richardson as a rebuttal witness. Detective Richardson testified that he interviewed appellant three days after appellant was arrested on January 12, 2018. The interview was recorded. Detective Richardson testified he also recorded the second phone call he had with Upshaw. Both recordings were admitted into evidence and played for the jury.

{¶ 19} During appellant's recorded interview, appellant repeatedly stated that on November 3, 2017, he was home with his family, including his children and his parents. Appellant claimed, "I know I was home because I seen the ambulance outside. Me and my whole family seen the ambulance. We all ran outside." Appellant did not mention during his interview with Detective Richardson that he had spent the day with Hensler and Brewer.

{¶ 20} During Upshaw's recorded phone call with Detective Richardson, Upshaw claimed that she was the female present during the robbery and that the perpetrators of the crime were Alvarez and Karr. Contrary to her trial testimony that she, Alvarez, and Karr "walked" from the alley to appellant's house after the robbery, during the recorded phone call with Detective Richardson, Upshaw stated that she, Alvarez, and Karr, "ran" from the robbery. During the phone call, Upshaw indicated that appellant's family knew she was involved in the robbery offense because Alvarez had confessed to appellant's family that he was the perpetrator and he had informed them that Upshaw had been present too. Appellant's family then contacted Upshaw, telling her that she was "the only person who [could] get [appellant] out of jail."

{¶ 21} After considering the foregoing testimony and evidence, the jury found appellant guilty of robbery. The trial court sentenced appellant to seven years in prison and ordered him to pay $250 in restitution to J.A.

{¶ 22} Appellant appealed his conviction, raising the following as his only assignment of error:

{¶ 23} APPELLANT'S ROBBERY CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} In his sole assignment of error, appellant argues his conviction was against the manifest weight of the evidence.

{¶ 25} A manifest weight of the evidence challenge examines the "inclination of the

greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing a manifest weight challenge, an appellate court "must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Hilton*, 12th Dist. Butler CA2015-03-064, 2015-Ohio-5198, ¶ 18. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Graham* at ¶ 66, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 26} Appellant was convicted of robbery in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Appellant concedes the manifest weight of the evidence presented at trial demonstrates that "a theft offense occurred accompanied with physical injury to the victim." However, he argues that he was the victim of misidentification and that the jury committed a miscarriage of justice by rejecting his alibi defense and finding him guilty of the robbery offense. Appellant further argues that because the robbery occurred on November 3, 2017 but J.A.'s police interview and identification of appellant in the photo lineup did not occur until November 27, 2017 and December 21, 2017, respectively, there is reason to doubt J.A.'s identification of him as a perpetrator of the crime.

{¶ 27} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the jury did not lose its way and that appellant's conviction for robbery is not against the manifest weight of the evidence. J.A. testified that he recognized appellant as one of the individuals who attacked him in the alley. J.A. knew appellant from his neighborhood, as appellant lived only three houses down from him. J.A. stated he saw appellant's face when appellant first approached him in the alley, when appellant began to punch and kick him, and when appellant removed his sneakers from his feet. J.A. named appellant as one of his assailants during his interview with Detective Richardson, when he picked appellant out of a photo lineup weeks after the crime, and when he testified at trial. J.A.'s identification of appellant as the perpetrator of the crime was therefore consistent throughout the investigation and court proceedings and was found to be credible by the jury.

{¶ 28} Appellant believes that the jury should have given more weight to his testimony and the testimony of Upshaw and Brewer. Appellant contends Upshaw's testimony established that she was a witness to the crime and that the perpetrators of the crime were Karr and Alvarez. Furthermore, appellant argues that his and Brewer's testimony establishes that he could not have been one of the perpetrators of the crime as he was at his home when the offense occurred.

{¶ 29} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Furthermore, "it [is] within the province of the jury * * * to take

note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 29.

{¶ 30} Appellant's conviction was not against the manifest weight of the evidence merely because the jury chose to believe the state's witnesses over the defense's witnesses. The jury was entitled to disregard Upshaw's version of events given that Upshaw admittedly only came forward as a witness after being asked to by appellant's family and her testimony was inconsistent with the details she provided during her phone calls to Detective Richardson. Although Upshaw claimed to be present for the robbery, she had to ask Detective Richardson where the robbery occurred. She also claimed that she initially believed the victim was "like, 30" before acknowledging J.A. was a "little boy."

{¶ 31} Similarly, the jury was entitled to find that appellant's alibi defense was not credible. The jury heard testimony that Brewer had not been identified as an alibi witness until around May 2018. Despite knowing appellant had been arrested in January 2018 for robbery and being provided with Detective Richardson's business card, Brewer did not contact the detective to provide an alibi for appellant. Furthermore, although appellant and Brewer claimed at trial that appellant spent November 3, 2017 doing yardwork and having a bonfire with Hensler and Brewer before falling asleep early that evening, this testimony was contradicted by appellant's January 15, 2018 statement to Detective Richardson. When interviewed by Detective Richardson, appellant did not claim that he had been home with Brewer and Hensler on the day of the robbery. Rather, appellant claimed that he had been home with his family, including his parents and children. However, Brewer testified that the only people appellant was with on November 3, 2017 was himself, Hensler, and Levi. According to Brewer, if anyone stated appellant's family had been present on November 3, 2017, it would have been a lie.

{¶ 32} Additionally, Brewer's account of what occurred on November 3, 2017 differed from appellant's version. Brewer testified Alvarez, Upshaw, and Karr had stopped by appellant's home that evening. Appellant did not mention Alvarez's, Upshaw's, or Karr's presence at his home on November 3, 2017 during his testimony or when giving a statement to Detective Richardson. Given the inconsistencies in appellant's statement to Detective Richardson, appellant's trial testimony, and Brewer's testimony, the jury was entitled to find appellant's alibi defense not credible.

{¶ 33} Accordingly, for the reasons stated above, we find that the jury did not lose its way and create such a manifest miscarriage of justice that appellant's conviction for robbery must be reversed. Appellant's conviction was not against the manifest weight of the evidence. His sole assignment of error is, therefore, overruled.

{¶ 34} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.