[Cite as *State v. Hurston*, 2019-Ohio-3618.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-01-023 |
| Appellee, | : | O P I N I O N<br>9/9/2019 |
| | : | |
| - vs - | : | |
| | : | |
| MIRACLE HURSTON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. 18CRB02797-A

Zachary A. Barnhart, City of Middletown Staff Attorney, One Donham Plaza, Middletown, Ohio 45042, for appellee

Michele Temmel, 6 South Second Street, Suite 305, Hamilton, Ohio 45011, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Miracle Hurston, appeals his conviction in the Middletown Municipal Court for assault. For the reasons stated below, we affirm.

{¶ 2} In July 2018, appellant was charged by complaint with one count of assault, a first-degree misdemeanor, in violation of Middletown Codified Ordinances 636.02(a). The

charge resulted from a confrontation between appellant and the owner-landlord ("victim") of a house adjacent to appellant's mother's house. Specifically, the victim alleged appellant struck her in the face causing her to fall on the ground. The case proceeded to a bench trial in October 2018. The trial court found appellant guilty as charged and sentenced him to two years of community control, a suspended jail term, and a fine.

{¶ 3} Appellant now appeals, raising one assignment of error for review.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR ASSAULT AND THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} In his sole assignment of error, appellant argues that the evidence was insufficient to convict because the prosecution failed to prove that he acted with the requisite mental state for the offense. Moreover, appellant argues that his conviction was against the manifest weight of the evidence.

{¶ 7} A sufficiency of the evidence challenge requires the appellate court to examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Gerdes*, 12th Dist. Butler No. CA2018-03-056, 2019-Ohio-913, ¶ 9.

{¶ 8} On the other hand, a manifest weight of the evidence challenge requires the appellate court to examine the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In conducting this examination, an appellate court must

look at the entire record, weigh the evidence and all reasonable

> inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Hall*, 12th Dist. Preble No. CA2018-07-006, 2018-Ohio-5300, ¶ 9. An appellate court will only overturn a conviction for manifest weight in the exceptional case where the evidence weighs heavily against the conviction. *State v. Holtman*, 12th Dist. Clermont No. CA2018-11-078, 2019-Ohio-3052, ¶ 24.

{¶ 9} This court has previously held that the "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 10} To convict appellant for assault in violation of Middletown Codified Ordinances 636.02(a), the prosecutor had to prove that appellant *knowingly* caused or attempted to cause physical harm to another. Knowingly is defined in Middletown Codified Ordinances 606.02(b) as "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 11} At the trial, the prosecutor called two witnesses: the victim and the victim's husband. The victim testified that she and her husband arrived at their property to inspect the damage to their fence and power lines from a fallen tree branch. While her husband was in the back yard, the victim saw appellant approach on the sidewalk. At this time, the victim was standing in her yard near the sidewalk. The victim asked appellant if he could provide the name of his mother's insurance company. Appellant denied having that information and suggested she ask his mother. The victim told appellant she did not speak to appellant's mother. According to the victim, appellant began to make disparaging remarks about her. Appellant's harangue continued for five to seven minutes. In response, the victim testified that she slowly retreated further into her yard to move away from

- 3 -

appellant. At some point, she shouted for her husband to come to the front. As the victim turned to watch her husband come around the house, appellant struck her in the jaw. The victim fell to the ground and briefly lost consciousness. She regained consciousness in time to see appellant striking her husband and her husband also fall to the ground. The victim testified that she suffered bruising and had headaches as a result of the incident.

{¶ 12} The victim's husband testified that he heard shouting coming from the front yard and the victim call his name. He then walked around the house to see what was happening. After he walked around the house, he got within three to five feet of the victim when appellant suddenly attacked both him and the victim, first striking her and then him. On cross-examination, both the victim and her husband denied making any contrary statements to the responding police officers.

{¶ 13} In his defense, appellant and both of his parents testified about the incident. Appellant's mother testified that she was near her front porch when she saw appellant approaching from the sidewalk. Appellant's mother saw the victim stop appellant, circle around him, and ask him a question. While she could not hear the entire conversation, she saw appellant point at her in response to the victim's inquiry. Appellant's mother then heard the two exchange derogatory remarks with each other and saw the victim "smack" appellant. The victim continued to provoke appellant in what appellant's mother described as "flinching at him," so appellant used his hand to push the victim's face. The victim then fell to the ground. All the while, appellant's mother yelled for appellant's father to come to the front yard and for appellant to disengage. After the victim fell to the ground, appellant's mother saw the victim's husband and appellant's father come into the front yard and the victim's husband charge at appellant.

{¶ 14} Appellant's father testified that he was in the back yard of the victim's property with the victim's husband when he heard a commotion in the front yard. He approached

- 4 -

the front yard with the victim's husband and saw the victim and appellant together. Appellant's father then saw the victim's husband charge towards appellant and appellant push the husband away. Appellant's father did not see any physical altercation between the victim and appellant.

{¶ 15} Finally, appellant testified that as he was walking along the sidewalk, the victim came onto the sidewalk in front of him and asked for his mother's insurance provider. In response to the inquiry, appellant told her to ask his mother. The victim then made a derogatory comment about his family to the person with whom she was talking on her phone. Insulted, appellant admitted that he began making derogatory comments about the victim. At that point, the victim turned around, slapped appellant, and lunged towards him. Appellant used his hand to push the victim away from him. As a result of the push, the victim fell to the ground and began yelling for her husband. The victim's husband and appellant's father came around the house and the victim's husband charged at appellant. Appellant pushed the victim's husband away causing him to also fall down. Appellant testified that he pushed the victim because he wanted to get away.

{¶ 16} After review of the record, the evidence was sufficient to convict appellant. Appellant testified that he applied his hand to the victim's face and pushed her to the ground. As noted above, the state was only required to prove appellant acted knowingly, that is with an awareness that a certain result will be probable. As this court has previously held, "[a]bsent a defendant's admission regarding his knowledge, whether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Hilton*, 12th Dist. Butler No. CA2015-03-064, 2015-Ohio-5198, ¶ 20. While appellant testified that he was not trying to hurt the victim, specific intent was not the mental state required to convict. Therefore, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all

the essential elements, including the mental state, proven beyond a reasonable doubt.

{¶ 17} Moreover, the conviction was not against the manifest weight of the evidence. A conviction is not against the manifest weight of the evidence merely because the trier of fact believed the prosecution testimony. *State v. Martino*, 12th Dist. Butler No. CA2017-09-139, 2018-Ohio-2882, ¶ 13. The trial court specifically found that it did not believe that the victim, an elderly woman, would attack appellant. "As the trier of fact in this case, the trial court was in the best position to judge the credibility of the parties and the weight to be given the evidence." *Hilton*, 2015-Ohio-5198 at ¶ 22. As this court has previously explained, "credibility of the witnesses is paramount in cases * * * where the evidence amounts to little more than a matter of 'he said, she said.'" *State v. Chasteen*, 12th Dist. Butler No. CA2013-12-223, 2014-Ohio-4622, ¶ 14. Consequently, this court will not disturb the trial court's finding as to credibility, given the evidence does not weigh heavily in favor of acquittal.

{¶ 18} Accordingly, appellant's sole assignment of error is overruled.

{¶ 19} Judgment affirmed.

S. POWELL, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 20} While I concur in judgment, I write separately to address my reasoning for affirming Hurston's conviction specific to self-defense. Self-defense requires three elements: (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v.*

*Delaffuente*, 12th Dist. Butler Nos. CA2015-03-040, CA2015-03-042, 2015-Ohio-4917, ¶ 9. I would affirm Hurston's conviction because he was unable to prove the elements of self-defense.

{¶ 21} A review of the transcript reveals that the trial court found credible the testimony that the victim approached Hurston, exchanged "ugly words" with him, and that "she smack[ed] at" Hurston. However, the court noted that regardless of "who caused those words," or the actions the victim took against Hurston, it could not accept that the 72-year-old victim "attacked" Hurston. The trial court also noted that even if the victim had attacked Hurston, he had a duty to retreat. These statements, made by the trial court during its disposition of the case, speak specifically to the elements of self-defense rather than to Hurston's credibility or lack thereof.

{¶ 22} Specific to self-defense, the trial court also noted that Hurston used unreasonable force in response to whatever action the victim took against him; "you shove her and, according to her testimony, she lost consciousness briefly." While Hurston asserted that the victim attacked him first, the trial court went on to note, "there was a smack and then a shove, hard enough for her to go down to the ground * * *." The trial court's statements demonstrate its reasoning specific to whether or not Hurston used reasonable force in response to the danger posed to him.

{¶ 23} While the trial court determined that the victim acted against Hurston, such action by the 72-year-old victim did not provide a reasonable basis for Hurston's reaction of pushing her hard enough to fall to the ground and lose consciousness. Given the lack of evidence to support self-defense, I agree that Hurston's conviction is supported by sufficient evidence and was not against the manifest weight of the evidence. As such, but for different reasons, I concur but do so in judgment only.